ANGELA VIDAL, ESQ.
Attorney at Law
201 Strykers Road
Suite 19-155
Phillipsburg, New Jersey 08865
(908)884-1841 telephone
(908)859-3201 facsimile
Attorney for Plaintiff, Kinekt Design, LLC

RECEIVED

JUL 19 2012

AT 8:30_____M
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KINEKT DESIGN, LLC,      : | CIVIL CASE NO. |
|               : | |
|               : | VERIFIED COMPLAINT |
|     Plaintiff,     : | |
|               : | |
| vs.               : | |
|               : | |
| JOHN DOE 1 A/K/A KIMBER M.,   : | |
| JOHN DOE 2 A/K/A HUGO C.,    : | |
| JOHN DOE3 A/K/A PARKOUTSIDE,   : | |
| JOHN  DOE 4 A/K/A VOCONE,     : | |
| JOHN DOE 5 A/K/A TRIDAN3,     : | |
| JOHN DOES6-10,GOODTIME         : | |
| JEWELLERY ACCESSORIES          : | |
| MANUFACTORY CO., NOVELIFE     : | |
| STORE, BUTTERFLY'S LOVE, THE   : | |
| NIGHT DAEMON, YIWU RUONING    : | |
| JEWELRY FACTORY, YIWU          : | |
| HUANSHUO JEWELRY FIRM,        : | |
| HUANSHUO JEWELRY CO., LTD.,   : | |
| HUI JEWELRY HOUSE, SHOKING    : | |
| (GZ) TRADING COMPANY, LTD.,   : | |
| JFU-INTERNATIONAL LIMITED,    : | |
| SHENZHEN VOGUENE TRADING      : | |
| COMPANY, LTD., DONGGUAN JUXIN : | |
| METAL MANUFACTURING and XYZ   : | |
| COMPANIES,               : | |
|               : | |
|     Defendants.     : | |

## COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT

Plaintiff, Kinekt Design, LLC, a New Jersey limited liability corporation, by and through its attorney, by way of Verified Complaint against the Defendants, John Doe 1 a/k/a Kimber M., John Doe 2 a/k/a Hugo C., John Doe 3 a/k/a Parkoutside, John Doe 4 a/k/a Vocone, John Doe 5 a/k/a Tridan3, John Does 6-10, Goodtime Jewellery Accessories Manufactory Co., NoveLife Store, Butterfly's Love, The Night Daemon, Yiwu Ruoning Jewelry Factory, Yiwu Huanshuo Jewelry Firm, Huanshuo Jewelry Co., Ltd., Hui Jewelry House, Shoking (GZ) Trading Company, Ltd., JFU-International Limited, Shenzhen Voguene Trading Co., Ltd., Dongguan Juxin Metal Manufacturing and XYZ Companies, saysas follows:

### JURISDICTION AND VENUE

1.    This is an action for patent and trademark infringement, injunctive relief and damages pursuant to 15 U.S.C. §1114, 15 U.S.C. §1125 and 35 U.S.C. §271, et seq. Subject matter jurisdiction is therefore conferred upon this Court pursuant to the provisions of 28 U.S.C. §1331 and 28 U.S.C. §1338.

2.    This Court has personal jurisdiction over the Defendants because Defendants direct their business activities towards, and conduct business with, consumers within this district through fully interactive, commercial Internet websites

2

and the products that are the subject of this action were, and continue to be, sold to consumers in the State of New Jersey.

3.   Venue is proper in this judicial district under 28 U.S.C. §1391, as a substantial part of the events giving rise to the claims occurred in this district, Defendants have sold, and continue to sell, products that infringe upon Plaintiff's patent and trademark within this district, Defendants conduct infringing activities and cause harm within this district and the property that is the subject of this action, the patent and the trademark, are situated in this district.

## THE PATENT AND TRADEMARK

4.   On June 7, 2011, the United States Patent and Trademark Office duly and legally issued United States Patent No. D639,139 (hereinafter referred to as the "Patent") to Glen Liberman and Ben Hopson for the design of an ornamental gear ring (hereinafter referred to as the "Gear Ring®").   Mr. Hopson assigned all right, title and interest to the Patent to Kinekt Design, LLC.   A photographic exemplar of the Gear Ring® is attached hereto as **"Exhibit A"** and the Patent is attached hereto as **"Exhibit B."**

5.   Plaintiff has placed a notice of said Patent on marketing and other informational material related to the Gear Ring®.

3

6.  Plaintiff has an additional utility patent pending for the Gear Ring® (Rotational education entertainment and therapeutic device), which has received notice of publication of application from the United States Patent and Trademark Office.

7.  On June 12, 2011, the United States Patent and Trademark Office duly and legally issued trademark Registration Number 4157820 to Kinekt Design, LLCfor the Gear Ring® (hereinafter referred to as the "Trademark").  On May 1, 2012, the United States Patent and Trademark Office also duly and legally issued trademark Registration Number 4134362 to Kinekt Design, LLC for "Kinekt®".  "Kinekt" has also been submitted for Customs and Border Patrol protection under CBP Recordation Number TMK 12-00693.

8.  Plaintiff has also submitted the Gear Ring® registered trademark to the United States Customs and Border Protection ("CBP"), Intellectual Property Rights Branch, and was assigned CBP Recordation Number TMK-12-00687 effective July 6, 2012.

9.  In addition, Plaintiff has submitted the Gear Ring® mark and the Kinekt® mark pursuant to the WIPO Madrid Protocol, and is obtaining a registered copyright through the United States Copyright Office as well.

10.  Plaintiff has followed each and every legal avenue available to it to protect its intellectual property rights.

**THE PARTIES**

4

11.    Plaintiff, Kinekt Design, LLC (hereinafter referred to as "Kinekt") is a limited liability corporation of the State of New Jersey with its principal place of business located at 184 South Livingston Avenue, Suite 9-239, Livingston, New Jersey 07039.

12.    Defendants, collectively, are individuals and entities that have been manufacturing, selling, offering for sale, distributing, marketing and advertising products which infringe on Plaintiff's Patent and Trademark in the United States and in this judicial district.

13.    Upon information and belief, Defendant John Doe 1 a/k/a Kimber M. (hereinafter referred to as "Defendant Kimber M.") is an individual whose actual full name is unconfirmed and who is engaged in the sale, offer for sale, distribution, marketing and advertisement of products which infringe on thePatent and Trademark on the interactive, commercial websites and/or URLs listed in "**Exhibit C**" hereto.

14.    Upon information and belief, Defendant John Doe 2 a/k/a Hugo C. (hereinafter referred to as "Defendant Hugo C.") is an individual whose actual full name is unconfirmed and who is engaged in the sale, offer for sale, distribution, marketing and advertisement of products which infringe on the Patent and Trademark on the interactive, commercial websites and/or URLs listed in "**Exhibit C**" hereto.

15.   Upon information and belief, Defendant John Doe 3 a/k/a Parkoutside (hereinafter referred to as "Defendant Parkoutside") is an individual whose actual full name is unconfirmed and who is engaged in the sale, offer for sale, distribution, marketing and advertisement of products which infringe on the Patent and Trademark on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto.

16.   Upon information and belief, Defendant John Doe 4 a/k/a Vocone (hereinafter referred to as "Defendant Vocone") is an individual whose actual full name is unconfirmed and who is engaged in the sale, offer for sale, distribution, marketing and advertisement of products which infringe on the Patent and Trademark on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto.

17.   Upon information and belief, Defendant John Doe 5 a/k/a Tridan3 (hereinafter referred to as "Defendant Tridan3") is an individual whose actual full name is unconfirmed and who is engaged in the sale, offer for sale, distribution, marketing and advertisement of products which infringe on the Patent and Trademark on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto.

18.   Upon information and belief, Defendant,Goodtime Jewellery Accessories Manufactory Co. Ltd., is a business entity of unknown makeup in the People's Republic of China that

unlawfully manufactures Plaintiff's patented and trademarked product and then conducts business throughout the United States, including within this district, by selling, offering for sale, distributing, marketing and advertising this counterfeited product on the interactive, commercial websites and/or URLslisted in **"Exhibit C"** hereto.

19. Upon information and belief, Defendant, NoveLife Store, is a business entity of unknown makeup in the People's Republic of China that unlawfully manufactures Plaintiff's patented and trademarked product and then conducts business throughout the United States, including within this district, by selling, offering for sale, distributing, marketing and advertising this counterfeited product on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto.

20. Upon information and belief, Defendant, Butterfly's Love, a business entity of unknown makeup in the People's Republic of China that unlawfully manufactures Plaintiff's patented and trademarked product and then conducts business throughout the United States, including within this district, by selling, offering for sale, distributing, marketing and advertising this counterfeited product on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto.

21. Upon information and belief, Defendant, The Night Daemon, is a business entity of unknown makeup in the People's

7

Republic of China that unlawfully manufactures Plaintiff's patented and trademarked product and then conducts business throughout the United States, including within this district, by selling, offering for sale, distributing, marketing and advertising this counterfeited product on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto.

22. Upon information and belief, Defendant, Yiwu Ruoning Jewelry Factory, is a business entity of unknown makeup in the People's Republic of China that unlawfully manufactures Plaintiff's patented and trademarked product and then conducts business throughout the United States, including within this district, by selling, offering for sale, distributing, marketing and advertising this counterfeited product on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto.

23. Upon information and belief, Defendant, Yiwu Huanshuo Jewelry Firm, is a business entity of unknown makeup in the People's Republic of China that unlawfully manufactures Plaintiff's patented and trademarked product and then conducts business throughout the United States, including within this district, by selling, offering for sale, distributing, marketing and advertising this counterfeited product on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto.

8

24.   Upon information and belief, Defendant, HuanShuo Jewelry Co., Ltd., is the parent company of Yiwu Huanshuo Jewelry Firm.

25.   Upon information and belief, Defendant, Hui Jewelry House, is a business entity of unknown makeup in the People's Republic of China that unlawfully manufactures Plaintiff's patented and trademarked product and then conducts business throughout the United States, including within this district, by selling, offering for sale, distributing, marketing and advertising this counterfeited product on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto.

26.   Upon information and belief, Defendant Shoking (GZ) Trading Company, Ltd., is a business entity of unknown makeup in the People's Republic of China that unlawfully manufactures Plaintiff's patented and trademarked product and then conducts business throughout the United States, including within this district, by selling, offering for sale, distributing, marketing and advertising this counterfeited product on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto.

27.   Upon information and belief, Defendant, JFU-International Limited, is the parent company of Shoking (GZ) Trading Company, Ltd.

28.   Upon information and belief, Defendant Shenzhen Voguene Trading Company, Ltd., is a business entity of unknown

9

makeup in the People's Republic of China that unlawfully manufactures Plaintiff's patented and trademarked product and then conducts business throughout the United States, including within this district, by selling, offering for sale, distributing, marketing and advertising this counterfeited product on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto. Defendant Shenzhen Voguene Trading Company, Ltd. is also using the "Kinekt" mark in connection with the sale of its infringing products and is therefore, infringing on that trademark as well and is attempting to pass of its counterfeit goods as genuine "Kinekt" goods.

29. Upon information and belief, Defendant Dongguan Juxin Metal Manufacturing, is a business entity of unknown makeup in the People's Republic of China that unlawfully manufactures Plaintiff's patented and trademarked product and then conducts business throughout the United States, including within this district, by selling, offering for sale, distributing, marketing and advertising this counterfeited product on the interactive, commercial websites and/or URLs listed in **"Exhibit C"** hereto.

30. Defendants, John Does 6-10, are additional individuals that are engaged in the manufacture, sale, offer for sale, distribution, marketing and/or advertisement of products which infringe on the Patent and Trademark, but whose identities,

10

actual names, addresses and telephone numbers are presently unknown.

31. Defendants, XYZ Corporations, are additional entities that are engaged in the manufacture, sale, offer for sale, distribution, marketing and/or advertisement of products which infringe on the Patent and Trademark, but whose identities, actual names, addresses and telephone numbers are presently unknown.

32. Plaintiff has diligently attempted to discover the true identities of the John Doe Defendants, but has failed to do so. Specifically, Plaintiff has contacted the websites where Defendant John Does advertise their products and requested their contact information, Plaintiff has contacted the John Does directly, via e-mail, requesting their true names and physical addresses and Plaintiff has also contacted consumers that have purchased products from the Defendant John Does requesting return address and other contact information. The websites advised that they would not provide that information without a court order. The John Does, with the exception of John Doe 2 a/k/a Hugo C, John Doe 4 a/k/a Vocone and John Doe 5 a/k/a Tridan3, have failed to respond to Plaintiff's request. The three (3) enumerated John Does have feigned cooperation with Plaintiff, but still failed to provide their contact information. The consumers Plaintiff contacted stated they

would see if they could find any remaining records regarding the sellers.

33.    All of the above-referenced Defendants (hereinafter collectively referred to as the "Defendants") are directly and personally contributing to, inducing and engaging in the manufacture, sale, offer for sale, distribution, marketing and advertising of counterfeit productswhich are exact copies of Plaintiff's Gear Ring® and which infringe upon the Patent and Trademark of the Plaintiff through the websites and/or URLs listed in **Exhibit C**" hereof. Defendants, upon information and belief, also sell, offer for sale, distribute, market and advertise these counterfeit products through other websites and/or URLs that are currently unknown to Plaintiff.

34.    Defendants' use of the "gear ring" designation for their product and their manufacture and sale of exact duplicates of the Gear Ring® product is being done without Plaintiff's consent or authorization, and with knowledge of the existence of Plaintiff's Patent and Trademark.

35.    In addition to designating their counterfeit jewelry as a "gear ring", some Defendants attempt to avoid detection and/or trademark infringement by calling their jewelry item by a name which is simply another variation and/or common replacement for the name "gear ring", such as "rotational device", "spinning wheel" and similar designation. While use of these terms does

not infringe upon the Trademark, the jewelry is an exact duplicate of Plaintiff's patented design and therefore, is still an infringement of the Patent.  Defendants also attempt to avoid detection by routinely removing a URL and creating a new URL.

36.   Plaintiff has given repeated written notice to Defendants of the infringement, including demands to cease and desist from said infringement, which Defendants have repeatedly ignored.

37.   Defendants have infringed, induced the infringement of, and/or contributorily infringed the Patent and Trademark and, despite repeated notice, are continuing said infringing conduct by manufacturing, selling, offering for sale, distributing, marketing and advertising throughout the United States, and in this judicial district, the identical product and product design protected and embodied by the Patent.  Defendants are also using the name Gear Ring® to refer to the name of the counterfeit products being manufactured, sold, offered for sale, distributed, marketed and advertised.

38.   Defendants' infringement of the Patent is in violation of 35 U.S.C. §271, is willful and deliberate, and upon information and belief, Defendants will continue to infringe on said Patent and continue to cause Plaintiff immediate, continuing and irreparable harm unless preliminarily and permanently enjoined by this Court.

13

39.   Defendants' infringement of the Trademark is in violation of 15U.S.C. §1114, is willful and deliberate, and upon information and belief, Defendants will continue to infringe on said Trademark and continue to cause Plaintiff immediate, continuing and irreparable harm unless preliminarily and permanently enjoined by this Court.

40.   Plaintiff has suffered injuries and damages that have been directly and proximately caused by Defendants' wrongful manufacture, sale, offer of sale, distribution, marketing and advertisement of goods that infringe upon Plaintiff's Patent and Trademark.

41.   Plaintiff has no adequate remedy at law.

42.   Plaintiff has retained undersigned counsel to represent it in this matter and is obligated to pay said counsel a reasonable fee for such representation.

## DEFINITIONS

43.   By way of background and/or reference, the following terms have the following definitions, courtesy of Wikipedia, as used herein:

> A.   "Website" is a set of related web pages containing content such as text, images, video, audio, etc. A website is hosted on at least one web server accessible via a network such as the Internet or a local area network through an Internet address known

as a Uniform Resource Locator ("URL"). The pages of a website can be accessed from a Uniform Resource Locator (URL) known as the "web address."

B. "Uniform Resource Locator" or "URL" is the unique address of any web document, or a specific character string that constitutes a reference to an Internet resource.

C. "Internet Service Provider" or "ISP" is an organization that provides access to the Internet and/or sells Internet connections

D. "Web server" can refer to either the computer or the computer application that helps to deliver Web content that can be accessed through the Internet. The most common use of Web servers is to host websites. The primary function of a Web server is to deliver Web pages on request of the user. A user agent, typically a Web browser or Web crawler, initiates communication by making a request for a specific resource using HTTP and the server responds with the content of that resource or an error message if unable to do so. Also called a "host" and is the equivalent of a "publisher" in the print world.

E. "Cached link" or a "cache" is a component that transparently stores data so that future requests for

that data can be provided faster.  In search results from Google, Yahoo! Search and some other search engines, there is usually a cached link which allows you to view the version of a page that the search engine has stored in its database.  The live page on the Web might differ from the cached copy because the cached copy dates from whenever the search engine's spider last visited the page and detected modified content.

F.   "Web host" is a type of Internet hosting service that allows individuals and organizations to make their websites available via the World Wide Web.

G.   "Search engine" is designed to search for information on the World Wide Web.  The search results are generally presented in a list of results referred to as "search engine results pages."  The information may consist of Web pages, images, information and other types of files.

H.   "Online marketplace" or "Internet marketplace" refers to a type of e-commerce site where product and inventory information is provided by multiple third parties and transactions are processed by the marketplace operator.  The transactions are then delivered and fulfilled by the participating retailers

16

or wholesalers.  Internet marketplaces offer a variety of products and provide consumers with the convenience of purchasing multiple products from a single store. Because Internet marketplaces aggregate products from a wide array of providers, selection is wide, availability is high and prices are more competitive.

I.  "Shopping engine" or "shopping search engine" is a search engine that allows similarity and comparison of features and prices for a wide variety of products.

## FACTS COMMON TO ALL COUNTS

44.  Plaintiff has been using the Gear Ring® mark in interstate commerce to identify and distinguish Plaintiff's product and the mark has never been assigned or licensed to any Defendant in this matter.

45.  Plaintiff has expended a significant amount of time, money and other resources to develop, produce, advertise and otherwise promote the Gear Ring® and has taken any and all steps necessary to protect its rights and interests in and to the Gear Ring®, both in this country and internationally.  Plaintiff is a small, start-up company seeking to grow its business based on its ingenuity in inventing the Gear Ring®, as well as its expenditure of significant resources to protect its invention, but has thus far, failed to reach its full business profitpotential because of Defendants' unlawful copying of

Plaintiff's design and name and selling it at a much lower cost.

46. During the summer of 2011, Plaintiff discovered an individual or entity known as "vkmason" advertising a "kinetic gear cog ring" for sale on Ebay.com. The ring being offered for sale was an exact duplicate of Plaintiff's Gear Ring® and therefore, was in violation of the Patent. Plaintiff attempted to remedy the infringement, but "vkmason" was unwilling to comply with Plaintiff's request to cease and desist his infringement of the Patent.

47. Accordingly, on or about August 12, 2011, Plaintiff brought suit in this Court against the "vkmason", later discovered to be Verlyn Kelly Mason (hereinafter referred to as "Mason"), for infringement of the Patent. Plaintiff sought preliminary and permanent injunctive relief against Mason. The case was assigned Case No. 2:11-cv-04658 and was captioned "Kinekt Design, LLC and Glen Liberman v. Verlyn Kelly Mason."

48. Mason was engaged in the manufacture, sale, offer for sale, distribution, marketing and/or advertising of a product which infringed on the Plaintiff's Patent in the exact same manner as the Defendants in the within matter and on some of the same websites as are listed in **"Exhibit C"** hereof. The conduct of Mason and the Defendants in this matter is identical, except

18

that Mason did not use the name" gear ring" to describe his product and therefore, did not infringe Plaintiff's Trademark.

49.    During the course of the proceedings, Mason advised the Court that he had purchased the "gear rings" that he was selling from the website listed as "Website 1" in **Exhibit C**" hereto (hereinafter referred to as "Website 1") and that he was unaware of any Patent.

50.    On or about September 7, 2011, the Honorable Stanley R. Chesler, U.S.D.J. entered an Order Granting Preliminary Injunction Against Defendant Verlyn Kelly Mason (hereinafter referred to as the "Mason Preliminary Injunction"). The Mason Preliminary Injunction ordered that:

> "Defendant, and all others in privity or participation with Defendant or on Defendant's behalf who receive actual notice or knowledge of this Order by personal service or otherwise, be and are hereby immediately:
>
> 1.  Restrained and enjoined from:
>
>      a.    Promoting, manufacturing, selling, advertising, offering for sale, distributing, shipping, or delivering any product that infringes upon the Patent, including, in particular, the "gear ring" that is the subject matter of the Verified Complaint;
>
>      b. Engaging in any acts or activities directly or indirectly calculated to trade upon the Patent or otherwise engaging in the infringement of the Patent…"

51.   As per the Order, Plaintiff served a copy of the Order on Mason, as well as on Website 1.

52.   The permanent injunction issued on June 18, 2012 and continued the same restrictions as contained in the Mason Preliminary Injunction.   An Amended Order For Permanent Injunction was issued on July 10, 2012 which made some minor language changes to the original permanent injunction and provided protection for Plaintiff internationally as well. Specifically, the Amended Order mandated that:

> "Defendant, and all others in privity or participation with Defendant or on Defendant's behalf who receive actual notice or knowledge of this Order by personal service or otherwise, be and are hereby immediately:

> 1.   Permanently restrained and enjoined from:

>> a.   Promoting, manufacturing, selling, advertising, offering for sale, distributing, shipping, or delivering any product that infringes upon the Patent, including, in particular, the "gear ring" that is the subject matter of the Verified Complaint **_in the United States or any other country or jurisdiction_**;

>> b.   Engaging in any acts or activities directly or indirectly calculated to trade upon the Patent or otherwise engaging in the infringement of the Patent **_in the United States or in any other country or jurisdiction_**..."

> (Emphasis added)

As such, the court recognized the fact that the individuals and/or entities in privity or participation with Mason were foreign nationals and/or foreign corporations advertising their goods on foreign websites for sale in the United States in the exact same manner and on the exact same basis as the Defendants in this case.

53.   Because the Mason Preliminary Injunction enjoined not only Mason, but all those in privity and/or participation with him, and Mason admitted that he had purchased the "gear rings" from Website 1, as well as the fact that Plaintiff had served Website 1 with a copy of the Mason Preliminary Injunction, Plaintiff was under the impression that the Mason Preliminary Injunction would apply to any other individuals or entities that attempted to sell any infringing products on Website 1.

54.   On or about June 17, 2012, Plaintiff discovered that Website 1, as well as one of its subsidiaries, parent companies and/or related entities, which is designated as Website 2 on **"Exhibit C"** hereof, were advertising for sale certain "gear ring jewelry" on Google Shopping.Specifically, Plaintiff discovered eleven (11) separate URLs on Google Shopping where Website 1 and its subsidiary, parent company and/or related entity(Website 2) were selling, offering for sale, marketing and advertising "gear ring jewelry" that was an exact duplicate of Plaintiff'spatented

Gear Ring®.   These URLs are listed in **"Exhibit C"** hereof and screen prints of each URL are attached.

55.   Accordingly, on June 18, 2012, Plaintiff informed Website 1 and Website 2, in writing, that they were infringing upon Plaintiff's Patent and Trademark and demanded that they immediately cease and desist the infringing activities. Plaintiff reminded Website 1 of the existence of the Mason Preliminary Injunction and provided a copy of such for the benefit of Website 2.   Website 1 responded that it, and its subsidiaries, parent companies and/or related entities, were simply platforms where sellers could offer products for sale and had no control over the content of such offers and/or the products being sold.   It therefore refused to take any action to remove the infringing URLs and/or take down the advertisements for the "gear ring jewelry," despite the existence of the Mason Preliminary Injunction.

56.   Plaintiff also contacted Google Shopping, in writing, and provided them with a copy of the Mason Preliminary Injunction requesting that they remove the URLs and all references to "gear ring jewelry" because Plaintiff was the sole and lawful owner of the Patent and Trademark for the Gear Ring®. Plaintiff also requested that Google remove any and all references to "Gear Ring®" from image and organic searches. Google refused this request as well.

57.  Despite the fact that the URLs were advertising the exact same product as that covered by the Mason Preliminary Injunction, Google responded by stating that it was simply a venue for sellers and buyers to connect, that it was not clear how the Mason Preliminary Injunction applied to anyone other than Verlyn Kelly Mason and that the URLs would not be removed. Instead, Google suggested that Plaintiff resolve the dispute directly with Websites 1 and 2 and/or the individuals advertising the infringing goods.

58.  Plaintiff also contacted Google Advertising Legal Support regarding this issue and received the same response as from Google Shopping, i.e. that the Mason Preliminary Injunction applied only to Mason and that the URLs would not be removed. In addition, Plaintiff's attorney sent a letter to Google Advertising Legal Support via certified mail, return receipt requested, explaining that the Mason Preliminary Injunction enjoined not only Mason, but all those in privity with Mason and, since Mason purchased the Gear Ring® from Website 1, the requisite privity was present and the Mason Preliminary Injunction applied to Website 1.  Even though an executed return receipt card was received, no response was ever provided by Google Advertising Legal Support.

59.  Having received no cooperation from Google and/or Websites 1 and 2 with regard to removal of the URLs, Plaintiff

requested Websites 1 and 2 provide Plaintiff with the names and contact information of the sellers who listed the infringing products for sale. Once again, Websites 1 and 2 refused Plaintiff's request and stated they would not provide any information without a court order.

60. At some point after Plaintiff requested the removal of the URLs based on infringement of the Patent and Trademark, the original URLs were removed and new ones put in place which did not reference the trade name "Gear Ring®", but instead advertised the product under a new name so as to avoid the Trademark infringement allegation. These products are, however, exact duplicates of the Plaintiff's Gear Ring® and therefore, still infringe upon Plaintiff's Patent. Moreover, some of the original URLs were put back and still make reference to "gear ring" jewelry.

61. Plaintiff thereafter attempted to discover the names and contact information of the individuals and entities that were actually advertising the gear ring jewelry for sale on the websites and URLs. As a result of this investigation, Plaintiff discovered the names of Defendants Kimber M., Hugo C., Tridan3, Goodtime Jewellery Accessories Manufactory Co., NoveLife Store, Butterfly's Love, The Night Daemon, Yiwu Ruoning Jewelry Factory, Yiwu Huanshuo Jewelry Firm, Huanshuo Jewelry Co., Ltd., Hui Jewelry House, Shoking (GZ) Trading Company, Ltd., JFU-

International Limited, Shenzhen Voguene Trading Company, Ltd. and Dongguan Juxin Metal Manufacturing.The URLs where these advertisements appear are listed in **"Exhibit C"** hereof and the screen shots of Defendants' advertisements marketing their gear ring products are also attached to **"Exhibit  C"** hereof. Plaintiff was not, however, able to determine the individual Defendants' full, true names and/or the individual Defendants' addresses.  Plaintiff therefore has no option but to subpoena Websites 1 and 2 and/or its parent company for the names and addresses of the individual Defendants.

62.     Plaintiff attempted to contact each of these Defendants via the contact information provided on the various websites and URLs to advise them of their infringement and demand that all such infringement of the Patent and Trademark immediately cease.  The only response received was from Defendant Hugo C. who stated that he would, in fact, cease such infringement.  Defendants Vocone and Tridan3 also stated that they would cooperate with Plaintiff.

63.  On or about July 4, 2012, Plaintiff discovered that a user known as "parkoutside" was advertising a "Men's gear ring" on the website known as iOffer.com.  This URL is listed in **"Exhibit C"** hereof and a screen print of the URL is attached. Once again, Plaintiff contacted the website, in this case, iOffer, and requested that the URL and listing be removed

because it was infringing upon Plaintiff's Patent and Trademark. As with Google, Plaintiff provided iOffer with a copy of the Mason Preliminary Injunction.  However, again, as with Google, iOffer stated that because the Mason Preliminary Injunction allegedly applied only to Mason, they would not remove anything without a court order and advised Plaintiff to contact the individual seller.  Plaintiff's notification to Defendant Parkoutside went unanswered.  Plaintiff has since discovered additional advertisements for a "gear ring" product.  The URLs where these advertisements appear are also included in **"Exhibit C"** hereto.

64.  On or about July 12, 2012, Plaintiff discovered that a user known as "Vocone" was advertising a "rotatable gear casting man ring" on the website known as Ebay.com.  This URL is listed in **"Exhibit C"** hereof and a screen print of the URL is attached. Once again, Plaintiff contacted the website, in this case, eBay, and requested that the URL and listing be removed because it was infringing upon Plaintiff's Patent and Trademark.  As with Google and iOffer, Plaintiff provided eBay with a copy of the Mason Preliminary Injunction.  However, again, as with Google and iOffer, eBay stated that because the Mason Preliminary Injunction allegedly applied only to Mason, they would not remove anything without a court order and advised Plaintiff to contact the individual seller.  Plaintiff notified Defendant

Vocone of the infringement and requested information regarding his purchase of the gear ring product.  Defendant Vocone advised that he would search for his purchase information.  Plaintiff has since discovered additional advertisements for a "gear ring" product.  The URLs where these advertisements appear are also included in **"Exhibit C"** hereto.

65.  Defendants post their infringing products on various online marketing and shopping websites and/or include a link to their own websites on these online marketing or shopping sites. These websites, and Defendants' infringing products, show up not only when a user searches the websites themselves, but also any time a user searches a shopping search engine.  This is, essentially, how Plaintiff discovered the infringement.  When a search for "Gear Ring®" is inserted into a shopping search engine or other search engine, the URLs on the specific online marketing or shopping websites appear.  The websites Defendants use to market and advertise the infringing products and the URLs containing the marketing and advertisements for the infringing products are essential components of Defendants' counterfeiting and infringing activities, as these are the means by which Defendants introduce the counterfeit products in interstate commerce and further their counterfeiting scheme and the harm to Plaintiff.

66.   In fact, the prevalence of the infringement of Plaintiff's Patent and Trademark can be evidenced by performing a simple search on any Internet search engine for the "Gear Ring®."  Such a search produces numerous listings for "gear ring jewelry" being sold and/or offered for sale on various online marketing or shopping websites by individuals and entities not related to or affiliated with Plaintiff, but which nevertheless are exact duplicates of Plaintiff's patented design.  Some of these listings refer to the jewelry as a "gear ring", thereby infringing upon Plaintiff's Trademark as well as Patent, while others refer to the jewelry by a different name, despite the fact that the design is an identical, exact duplicate of Plaintiffs' patented design.  Defendants have cleverly attempted to avoid detection by referring to the jewelry by other common words similar to "gear ring" such as "rotational device" jewelry, "spinning wheel" jewelry and similar designations which, nevertheless, are identical to Plaintiff's Gear Ring®, although referenced by a different name.

67.   Plaintiff has attempted to remedy this widespread infringement by requesting that the relevant shopping, marketing and/or vendor sites delete all URLs which reference the "gear ring" and/or all URLs that sell or offer to sell gear ring jewelry under a different name.  While some have complied with Plaintiff's request, most require a court order to do so and/or

advise Plaintiff to contact the applicable sellers directly. The sellers involved that Plaintiff contacts likewise refuse to honor Plaintiff's Patent and/or Trademark.   Particularly the Defendant Chinese factories believe they are beyond the reach of United States courts and can flagrantly violate any intellectual property rights they please without consequence.   Moreover, while Plaintiff attempted to remedy this infringement by filing the Mason lawsuit, most individuals and entities refuse to comply with the terms of the Mason injunctions, arguing that they apply solely to Mason, despite the fact that they involve the exact same infringement, in the exact same manner and mostly, on the exact same websites, at least one (1) of which is subject to the Mason injunctions as an entity in privity with Mason.   Plaintiff has therefore been forced to bring this subsequent suit to further protect its valid and legally enforceable rights.

## COUNT I

### Patent Infringement

68.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 67 above and incorporates them as if fully set forth at length herein.

69.   Defendants have made, used, offered to sell and sold Plaintiff's patented invention within the United States and/or imported into the United States Plaintiff's patented invention

during the term of the Patent without Plaintiff's authority or consent in violation of 35 U.S.C. §271.

70. Defendants have been made aware of their infringement by written notice from Plaintiff yet continue to infringe upon Plaintiff's Patent by manufacturing exact duplicates of Plaintiff's patented invention and using, selling and/or offering to sell Plaintiff's patented invention in the United States and in this judicial district.

71. Defendants' repeated and continuous violation of Plaintiff's Patent, despite notice of the infringement, is willful and intentional.

72. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff.

73. Plaintiff has suffered and will continue to suffer irreparable injury due to Defendants' infringement of Plaintiff's Patent if the Defendants are not preliminarily and permanently enjoined from such conduct.

## COUNT II

### Trademark Infringement

74. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 73 above and incorporates them as if fully set forth at length herein.

75. Plaintiff's Trademark is a federally registered mark.

76.   Defendants have used the name Gear Ring® to designate their product in connection with the sale, offer for sale, distribution, marketing and advertising of goods for their own financial gain.   Some of the Defendants have also used the Kinekt® name in conjunction with the sale of their infringing goods.

77.   Plaintiff has not authorized Defendants' use of Plaintiff's Trademark.

78.   Defendants' unauthorized use of Plaintiff's Trademark in connection with the sale, offer for sale, distribution, marketing and advertising of goods constitutes Defendants' use of Plaintiff's registered trademark in commerce.

79.   Defendants' unauthorized use of Plaintiff's Trademark is likely to cause and actually is causing confusion, mistake and deception among consumers and/oris causing consumers to believe that Defendants' goods originate from Plaintiff or that Plaintiff has authorized, approved or otherwise associated itself with Defendants' counterfeit goods that bear Plaintiff's Trademark.

80.   Defendants' unauthorized use of Plaintiff's Trademark has resulted in Defendants unfairly, illegally and improperly benefitting from Plaintiff's name and goodwill.

81.   Defendants have therefore infringed Plaintiff's Trademark in violation of 15 U.S.C. §1114.

82.    Defendants' repeated and continuous violation of Plaintiff's Trademark, despite notice of the infringement, is willful and intentional and therefore, this constitutes and exceptional case.

83.    Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff.

84.    Plaintiff has suffered and will continue to suffer irreparable injury due to Defendants' infringement of Plaintiff's Trademark if Defendants are not preliminarily and permanently enjoined from such conduct.

## COUNT III

## False Designation of Origin

85.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 84 above and incorporates them as if fully set forth at length herein.

86.    Defendants' unauthorized use in interstate commerce of Plaintiff's Trademark constitutes infringement, as well as the use of false descriptions and representations and false designation of origin in violation of 15 U.S.C. §1125(a).

87.    Defendants' use in commerce of such false designations of origin and false or misleading descriptions and representations is likely to cause confusion in consumers as to the connection of Defendants with Plaintiff and the origin of Defendants' goods.

88.   Defendants' repeated and continuous sale of infringing goods is willful and intentional.

89.   Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff.

90.   Plaintiff has suffered and will continue to suffer irreparable injury due to the Defendants' false designation of origin and their false descriptions and representations if Defendants are not preliminarily and permanently enjoined from such conduct.

## COUNT IV

## Deceptive Trade Practices

91.   Plaintiffs repeats and realleges the allegations contained in paragraphs 1 through 90 above and incorporates them as if fully set forth at length herein.

92.   Defendants' use of the "Gear Ring®" name in connection with the sale, offer for sale, distribution, marketing and advertising of their infringing products is fraudulent, misleading and deceptive, and made with the intention that consumers rely on such misrepresentation and believe that the product being offered for sale is a true "Gear Ring®" product.

93.   Defendants' use of the "Gear Ring®" and/or Kinekt® name in connection with the sale, offer for sale, distribution, marketing and advertising of its infringing product constitutes

fraud in connection with the sale or advertisement of goods in violation of N.J.S.A. 56:8-2.

94. Defendants' unlawful fraud and deception has caused and is continuing to cause unquantifiable damages to Plaintiff.

95. Plaintiff has suffered and will continue to suffer irreparable injury due to the Defendants' deceptive trade practices if Defendants are not preliminarily and permanently enjoined from such conduct.

## COUNT V

### Unfair Competition

96. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 95 above and incorporates them as if fully set forth at length herein.

97. Defendants have engaged in fraudulent, misleading and unlawful conduct in attempting to pass off their counterfeit gear ring products as Plaintiff's products.

98. Defendants have committed these acts willfully and with conscious disregard of Plaintiff's rights.

99. Defendants have therefore engaged in unfair competition in violation of the common law of the State of New Jersey.

100. Defendants' unlawful fraud and deception has caused and is continuing to cause unquantifiable damages to Plaintiff.

101.   Plaintiff has suffered and will continue to suffer irreparable injury due to the Defendants' unfair competition if Defendants are not preliminarily and permanently enjoined from such conduct.

## COUNT VI

## Interference With Prospective Economic Advantage

102.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 101 above and incorporates them as if fully set forth at length herein.

103.   Plaintiff has expended a significant amount of time, money and other resources in developing, patenting, trademarking, advertising and marketing the Gear Ring® and expects to gain a significant economic advantage from its efforts.

104.   Defendants have interfered with this economic advantage by manufacturing, selling, offering to sell, distributing, marketing and advertising counterfeit gear ring products.

105.   Defendants' manufacture, sale and advertising of counterfeit gear ring products and their interference with Plaintiff's prospective economic advantage has been done without justification or excuse.

106.   If Defendants were not selling counterfeit gear ring products, all consumers wishing to purchase a Gear Ring® would

do so from Plaintiff, the rightful and true owner of the Gear Ring® Patent and Trademark, and Plaintiff would thereby gain all these customers and an economic advantage.

107. As a result of Defendants' interference with Plaintiff's prospective economic advantage, Plaintiff hassuffered and will continue to suffer unquantifiable damages.

108. Plaintiff has suffered and will continue to suffer irreparable injury due to the Defendants' interference with prospective economic advantage if Defendants are not preliminarily and permanently enjoined from such conduct.

## COUNT VII

### Unjust Enrichment

109. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 108 above and incorporates them as if fully set forth at length herein.

110. Defendants profit from the manufacture, sale, offer for sale, distribution, marketing and advertising of gear ring products that are exact duplicates of Plaintiff's patented Gear Ring®.

111. Defendants therefore receive a benefit from the duplication and sale of Plaintiff's patented product and use of the trademarked "Gear Ring®" name.

112. Defendants have been unjustly enriched by their manufacture of counterfeit products and use of the Gear

Ring®name, as well as their sale, distribution, marketing and advertising of gear ring products, all to the detriment of Plaintiff.

113.   It would be unjust for Defendants to retain this benefit and Defendants should not be permitted to reap the benefits of this wrongful conduct.

114.   As a result of Defendants' conduct, Plaintiff has suffered and will continue to suffer unquantifiable damages.

## PRAYER FOR RELIEF ON ALL COUNTS

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

a. Adjudging the Plaintiff's Patent and Trademark to be valid and enforceable;

b. Adjudging that the Defendants have infringed Plaintiff's Patent and Trademark and engaged in the other wrongful conduct set forth above;

c. Adjudging that Defendants' conduct was willful and intentional;

d. That Defendants, and all persons or entities acting in concert or participation with Defendants, either directly or indirectly, be permanently enjoined from infringing, contributing to the infringement of, and/or inducing the infringement of the Patent and Trademark, in the United States or in any other country or jurisdiction, and specifically from

directly or indirectly manufacturing, making, using, marketing, distributing, selling or offering for sale in the United States or in any other country or jurisdiction, any product embodying the design of the Patent during the life of the Patent, regardless of the name being used for such product, without the express written authority of the Plaintiff and from using the name "Gear Ring" or any similar name in connection with the manufacture, sale, offer for sale, marketing and/or advertising;

e.   That Defendants, and all persons or entities acting in concert or participation with Defendants, either directly or indirectly, whether in the United States or any other country or jurisdiction, be required to immediately remove all uses of, references to, depictions of, offers for sale and advertising of the Gear Ring® product, regardless of the name by which it is called, and all uses of the Gear Ring®and Kinekt® name from any and all websites and/or URLs where such may appear including, but not limited to, the websites and URLs specifically listed in **"Exhibit C"** hereto;

f.   That any Internet service providers, merchant account providers, online marketplace  and shopping search engines and websites, as well as third-party processors and search engines, including Websites 1 and 2, Google, Inc., Google Plus, Google Shopping, Google Search, other Google products, iOffer, Microsoft Corporation's Bing, eBay, AOL, Ask and Yahoo, Inc,, as

well as any social media websites including, but not limited to, Facebook, Twitter, Google+, Digg, Reddit, Pinterest,Youtube and Myspace, must, upon request of Plaintiff, immediately remove any and all listings by Defendants and/or links to their sites where Plaintiff's Gear Ring® product and/or use of the Gear Ring® name are being used, offered for sale, marketed and/or advertised and that all such listings be de-indexed so that they no longer appear on any search and/or removed from any search results page; and that all such Internet service providers, merchant account providers, online marketplace and shopping search engines and websites, as well as third-party processors and search engines, must, upon request of Plaintiff, immediately remove any and all listings by future infringers and/or links to their sites where Plaintiff's Gear Ring® product and/or use of the Gear Ring® or Kinekt® name are being used, offered for sale, marketed and/or advertised, upon proof by Plaintiff that the future infringer is using, offering for sale, marketing and/or advertising a product that is an exact duplicate of Plaintiff's Gear Ring® and/or using the Gear Ring® name;

g.   That Defendants provide an accounting of all profits derived from their patent and trademark infringement and sales of gear ring jewelry, and that Defendants pay such profits to Plaintiff, along with actual damages suffered by Plaintiff, trebled;

h. Alternatively, that Plaintiff be awarded statutory damages in the amount of One Million Dollars ($1,000,000.00) per infringement;

i. That Defendants be prohibited from destroying, altering, removing, hiding or otherwise tampering with any books or records that contain any information relating to the manufacturing, importation, production, distribution, sale, marketing and/or advertising of all products that infringe on Plaintiff's Patent and/or Trademark;

j. That any third party providing payment and related services for Defendants' sale of infringing "gear ring" products, including merchant account providers, credit card companies, payment providers and/or third party payment processors including, but not limited to, PayPal, Google Checkout, Moneybookers, Alipay, 2Checkout, CyberSource, Authorize.net, LinkPoint and similar providers and processors immediately cease rendering such services to Defendants for sales of gear ring products and shall, upon receiving notice of an applicable Order, deliver to Plaintiff, or its representative, copies of all documents and records relating toDefendants, Defendants' sale of Gear Ring® products, Defendants' assets and Defendants' business operations, including records and data contained in electronic format;

k. That, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure, Defendants, any persons in concert or participation with them, the websites listed in **"Exhibit C"** hereof and any third party payment processors, as listed above, who receive notice of an Order of this Court, shall immediately locate all accounts connected to Defendants and be temporarily restrained and enjoined from transferring or disposing of any money or assets, without prior approval of this Court, except as to a Defendant that files with the Court and serves upon Plaintiff's counsel an accounting of any and all of Defendant's assets located in the United States, as well as the location and identity thereof, and documentary proof acceptable to Plaintiff, which acceptance shall not be unreasonably denied, that particular monies or assets are not proceeds of Defendants' counterfeiting activities, in which case those particular assets shall be released to such Defendant;

l. That Defendants pay Plaintiff its reasonable attorneys' fees and costs pursuant to 15 U.S.C.§1117(a);

m. Adjudging that this case be deemed exceptional;

n. Adjudging that Defendants be ordered to deliver to Plaintiff, for destruction at Plaintiff's option, all products that infringe the Patent;

o. Adjudging that if Plaintiff discoversadditional defendants that are infringing its Patent and/or Trademark

and/or additional listings, websites and/or URLs that are selling, offering for sale, marketing or advertising products that infringe Plaintiff's Patent or Trademark, Plaintiff may, upon providing notice of any Order entered in this matter to such defendants, bring the additional infringing defendants and/or listings to the Court's attention and seek to establish to the Court's satisfaction that the additional defendants are committing the same infringement, for additional summary relief without the need for filing a new action;

p. That Defendants be prohibited from forming new entities or companies, effecting assignments or transfers or utilizing any other device for the purpose of circumventing or avoiding the mandates or prohibitions set forth in any Order or Final Judgment in this matter; and,

q. Such other relief as the court deems just and proper.

Dated:   July 18, 2012

Angela Vidal, Attorney at Law
Attorney for Plaintiff,
Kinekt Design, LLC

By:  Angela Vidal, Esq.
201 Strykers Road
Suite 19-155
Phillipsburg, New Jersey
08865
Telephone (908)884-1841
Facsimile (908)859-3201

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I certify that, to the best of my knowledge, the matter in controversy is not the subject of any other pending or anticipated litigation in any court or arbitration proceeding, nor are there any non-parties known to Plaintiff that should be joined in this action.  In addition, I recognize a continuing obligation during the course of this litigation to file and to serve on all other parties and with the Court an amended certification if there is a change in the facts stated in this original certification.

Dated:   July 18, 2012

Angela Vidal, Attorney at Law
Attorney for Plaintiff,
Kinekt Design, LLC

By:    Angela Vidal, Esq.

## LOCAL CIVIL RULE 201.1 CERTIFICATION

I hereby certify that the above-captioned matter is not subject to compulsory arbitration in that declaratory and injunctive relief is sought.

Dated:   July 18, 2012

Angela Vidal, Attorney at Law
Attorney for Plaintiff,
Kinekt Design, LLC

By:    Angela Vidal, Esq.

43

## VERIFICATION

1.  I, Glen Liberman, of full age, hereby verify and state that I am the inventor and holder of United States Patent Number D639,199 and the sole member of Plaintiff, Kinekt Design, LLC.

2.  I have full knowledge of all the facts and circumstances regarding this matter.

3.  I have read the foregoing Verified Complaint and verify that the contents thereof are true based on my own personal knowledge, except as to any matters stated upon information and belief, and as to those matters, I believe them to be true based on the information available to me.

4.  I hereby verify under penalty of perjury that the foregoing statements made by me are true and correct and I am aware that if any of the foregoing statements made by me are found to be willfully false, I am subject to punishment.

                                        _____
                                        Glen Liberman

Sworn and subscribed
before me on this
_16th_ day of July, 2012

_____

My commission expires: _Aug 12, 2014_

MARCELLE BHOLO
Notary Public
State of New Jersey
My Commission Expires Aug 12, 2014

44

# EXHIBIT A

Kinekt Design



NEWS   PRODUCTS   ABOUT   FAQ   EXTRAS



5 ▼ SIZING   sizing chart » pdf

ADD TO CART
Free worldwide shipping
VAT/Duty not included

Lifetime warranty included

Easy return and exchange policy with no restocking fees



   

The patented Gear Ring is made from high quality matte stainless steel. It features micro-precision gears that turn in unison when the outer rims are spun (as can be seen in the video). It is currently available for purchase in sixteen standard US ring sizes: 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 & 20.

For sizing, please note that our ring is wider than average. If you are a half size, we recommend ordering the next whole size up (one half size larger).

Gift certificates and custom Gear Ring orders are available. Please email us for more information.

We gladly offer a full money back guarantee (see FAQ section) if you are unsatisfied with your purchase for any reason.

*"The 'Gear Ring' intrigued the engineer in me and opened my eyes to jewelry."*

Join mailing list.   SIGNUP

All content Copyright Kinekt Design LLC, Gear Ring patented and other patents-pending | All rights reserved | site design by swissmiss

http://www.kinektdesign.com/product-gear-ring.php

7/16/2012

# EXHIBIT B

US00D639199S

| (12) **United States Design Patent** | (10) Patent No.: | **US D639,199 S** |
| Liberman et al. | (45) Date of Patent: | ★★ **Jun. 7, 2011** |

(54) **GEAR RING**

(76) Inventors: **Glen Liberman**, Short Hills, NJ (US);
**Ben Hooson**, Brooklyn, NY (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/349,563**

(22) Filed: **Apr. 14, 2010**

(51) LOC (9) Cl. .................................................. **11-01**
(52) U.S. Cl. ........................................................ **D11/26**
(58) Field of Classification Search ............ D11/26–39,
D11/3; 63/15, 15.1–15.4, 15.45, 15.5, 15.6,
63/15.65, 15.7, 26
See application file for complete search history.

(56)              **References Cited**

U.S. PATENT DOCUMENTS

| D119,814 | S | * | 4/1940 | Whitehead | .............. | D11/38 |
| D170,628 | S | * | 10/1953 | Capraro | .............. | D11/39 |
| D184,803 | S | * | 4/1959 | Sager | .............. | D11/39 |
| D450,009 | S | * | 11/2001 | Molfese | .............. | D11/26 |
| D491,834 | S | * | 6/2004 | Flynn | .............. | D11/26 |
| D532,331 | S | * | 11/2006 | Jang et al. | .............. | D11/26 |
| D588,489 | S | * | 3/2009 | Kizyy | .............. | D11/38 |
| D606,442 | S | * | 12/2009 | Jang et al. | .............. | D11/26 |

* cited by examiner

*Primary Examiner* — Cathron C Brooks
*Assistant Examiner* — Melanie Levy
(74) *Attorney, Agent, or Firm* — Spriegel & Associates

(57)                **CLAIM**

The ornamental design for a gear ring, as shown and
described.

**DESCRIPTION**

FIG. 1 is a perspective view of gear ring showing our new
design;
FIG. 2 is a top view thereof; and,
FIG. 3 is a front view thereof, the rear view being a mirror
image of such front view.
The portions of the gears shown in broken lines, form no part
of the claimed design.

**1 Claim, 3 Drawing Sheets**

